No. 85,704

STATE OF KANSAS, *Appellee*, v. JEREMY J. BELL, *Appellant*.

(41 P.3d 783)

Opinion filed March 8, 2002.

*Keith E. Schroeder*, district attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellee.

*Autumn Fox*, of The Law Office of Autumn L. Fox, of Abilene, argued the cause and was on the brief for appellant.

The opinion of the court was delivered by

MCFARLAND, C.J.: Jeremy J. Bell appeals his jury trial conviction of intentional second-degree murder (K.S.A. 1998 Supp. 21-3402). He was sentenced to life imprisonment with no possibility of parole for a period of 10 years, said sentence to run consecutive to an earlier sentence in an unrelated case. This is the second time this case has been before us. In the first appeal, the issue was a ruling made at the preliminary hearing. *State v. Bell*, 268 Kan. 764, 1 P.3d 325 (2000).

The facts may be summarized as follows. During the early morning hours of September 4, 1998, Carl Gustafson was walking home from a neighborhood bar to his Hutchinson home. His path took him past 528 Fontron Street where a party was in progress, with a number of partygoers in the front yard. The host was Eric Lamunyon. As Gustafson walked by the residence, defendant left the party and accosted Gustafson, despite comments from other guests to leave Gustafson alone. Defendant knocked Gustafson down. Gus-

tafson stated he did not want any problems, regained his feet, and left. Defendant and another partygoer, Shane McAllister, walked down the street a short distance. Later a man armed with a shotgun confronted the partygoers in the Lamunyon yard and asked why Gustafson had been assaulted. The witnesses agreed the armed man was not Gustafson.

Later Gustafson came back to the scene, stating he only wanted to look for his glasses which had fallen off during the earlier scuffle and did not want any trouble. Defendant, who was a short distance down the street, had heard about the shotgun incident, saw Gustafson, and ran back toward the Lamunyon yard. While Gustafson was talking, the defendant picked up an object described as a baseball bat or 2-by-4, crept up behind Gustafson and dealt a massive blow to Gustafson's head. The sound of the blow was variously described by the observers as a popping or cracking noise, or the sound of a baseball bat hitting a ball. Defendant assisted in taking Gustafson to the hospital where he died 10 days later from his head trauma. Defendant appeals his conviction of intentional second-degree murder. Other facts will be stated as necessary for the discussion of particular issues.

## INSTRUCTIONS

For his first claim of error, defendant contends the trial court erred in refusing to instruct the jury on voluntary manslaughter/heat of passion and on involuntary manslaughter/excessive force. It should be noted the jury was instructed on second-degree intentional murder (the charged crime), second-degree unintentional/reckless murder, voluntary manslaughter/imperfect defense, involuntary manslaughter/reckless, and aggravated battery. A self-defense instruction was also given.

To understand and determine this claim of error, some additional facts need to be stated. Defendant testified he thought Gustafson had a gun and was threatening defendant's friends. No gun was seen, but Gustafson held one hand behind his back. This hand would have been visible to defendant as he crept up on Gustafson. While he was closing in on Gustafson's back, various partygoers

urged defendant not to harm Gustafson and shouted warnings to Gustafson of defendant's approach.

A criminal defendant has a right to an instruction on all lesser included offenses supported by the evidence at trial so long as the evidence, when viewed in the light most favorable to the defendant's theory, would justify a jury verdict in accord with the defendant's theory and the evidence at trial does not exclude a theory of guilt on the lesser offense. *State v. Calderon*, 270 Kan. 241, 256, 13 P.3d 871 (2000).

Voluntary manslaughter is defined in part as the intentional killing of a human being committed upon sudden quarrel or in the heat of passion. K.S.A. 21-3403(a).

"In order that a court be required to instruct on voluntary manslaughter committed in the heat of passion, the evidence must show that the heat of passion alleged resulted from severe provocation sufficient to cause an ordinary person to lose control of his or her actions or reason. [Citation omitted.] The provocation must consist of more than mere words or gestures." *State v. Evans*, 270 Kan. 585, 588, 17 P.3d 340 (2001).

The provocation must be such that it would cause an ordinary person to act without reflection. *State v. Follin*, 263 Kan. 28, 35, 947 P.2d 8 (1997). The provocation must be sufficient to move an ordinary person to kill. *Evans*, 270 Kan. at 589.

Defendant argues that his initial encounter with Gustafson, the appearance of the man with the shotgun at Lamunyon's house, and Gustafson's return created a tense and excited atmosphere and created the fear in defendant's mind that Gustafson had a gun and planned to hurt his friends. Nothing defendant describes rises to the level of provocation necessary to require a heat of passion instruction.

The trial court did not err in refusing to instruct on voluntary manslaughter/heat of passion.

Defendant next argues that the trial court erred in refusing to instruct on involuntary manslaughter/excessive force. Involuntary manslaughter is defined in part as the unintentional killing of a human being committed during the commission of a lawful act in an unlawful manner. K.S.A. 2001 Supp. 21-3404(c). One example of a lawful act done in an unlawful manner is the use of excessive

force against an aggressor when a person reasonably believes that such conduct is necessary to defend himself or herself or another against such aggressor's imminent use of unlawful force. *State v. Bell*, 266 Kan. 896, 916, 975 P.2d 239, *cert. denied* 528 U.S. 905 (1999).

Defendant's testimony relating to the defense of himself or his friends was that he thought Gustafson had a gun, based on what he had heard from others and because Gustafson had one hand behind him and was telling the partygoers to stay back. Walker (a party guest) and Lamunyon testified that though they did not see a gun, because Gustafson's hand was behind his back they thought he might have one and put their hands in the air as a precaution. Defendant testified that he was simply trying to knock Gustafson's weapon from his hand in order to protect his friends and himself. Defendant stated that he did not aim for Gustafson's head and did not intend to kill him.

Even assuming, based on defendant's testimony, that the killing was unintentional and crediting his theory that he had a reasonable belief that the use of force was necessary to protect friends who were yelling "no" and "don't do it," defendant was still not entitled to an involuntary manslaughter/excessive force instruction. The problem with giving this instruction is that if the jury believed defendant's testimony that he thought Gustafson had a gun and intended to hurt one or more of the party crowd, then defendant's use of force in hitting Gustafson would not have been excessive. See *Bell*, 266 Kan. at 917.

We find no error in the trial court's refusal to instruct on involuntary manslaughter/excessive force.

## ADMISSION OF PHOTOGRAPHS

Defendant contends the two autopsy photos admitted into evidence were prejudicial and cumulative and, accordingly, their admission was erroneous. We disagree.

The admission of photographs in a homicide case is a matter within the trial court's discretion, and the trial court's ruling will not be disturbed on appeal absent the showing of an abuse of that discretion. *State v. Verge*, 272 Kan. 501, 515, 34 P.3d 449 (2001).

An abuse of discretion has occurred when the admitted photographs were unduly repetitious and cumulative or their introduction was solely for the purpose of prejudice. The admission of photographs in a murder case has rarely been held to be an abuse of discretion. *State v. Deal*, 271 Kan. 483, 493, 23 P.3d 840 (2001).

Photographs depicting the extent, nature, and number of wounds inflicted are generally relevant in a murder case. *State v. Groschang*, 272 Kan. 652, 667, 36 P.3d 231 (2001). Photographs which are relevant and material in assisting the jury's understanding of medical testimony are admissible. Specifically, photographs which aid a pathologist in explaining the cause of death are admissible. *Deal*, 271 Kan. at 493. Photographs used to prove the manner of death and the violent nature of the crime are relevant and admissible. *Groschang*, 36 P.3d at 243.

The complained-of photographs are two 3-by-5-inch color photos. The first shows a portion of the victim's skull prior to any invasive autopsy procedures. It depicts a closed, surgical incision from a procedure performed during defendant's hospital stay to remove blood which had been accumulating under the skull from the victim's injuries. The other photograph shows the scalp pulled down to demonstrate the visible cracks in the victim's skull from the trauma thereto. The photographs were used by forensic pathologist, Dr. Corrie L. May, to illustrate injury to the skull and the later surgical procedures.

The photographs were neither prejudicial nor cumulative. No abuse of discretion has been shown in their admission.

## LATE ENDORSEMENT OF A STATE WITNESS

Defendant argues that the trial court erred in allowing the late endorsement of Vanessa Smith as a witness for the State. K.S.A. 2001 Supp. 22-3201(g) provides:

"Except as otherwise provided, the prosecuting attorney shall endorse the names of all witnesses known to the prosecuting attorney upon the complaint, information and indictment at the time of filing it. Except as otherwise provided, the prosecuting attorney may endorse on it the names of other witnesses that may afterward become known to the prosecuting attorney, at times that the court may by rule or otherwise prescribe."

The right of the State to endorse additional witnesses lies in the sound discretion of the trial court, and its ruling will not be disturbed on appeal in the absence of a showing of abuse of discretion. The test is whether the defendant's rights have been prejudiced. *State v. White & Stewart*, 225 Kan. 87, 91, 587 P.2d 1259 (1978).

An appellate court will generally uphold a late endorsement unless the defendant was surprised and the testimony was critical, in other words, of " 'a climactic and highly damaging nature.' " *State v. Allen*, 21 Kan. App. 2d 811, 816 , 908 P.2d 1324 (1995), *rev. denied* 259 Kan. 928 (1996). Further, to sustain a claim of reversible error, a defendant must have objected to the late endorsement and must have been denied a request for a continuance of the trial. *State v. Beebe*, 244 Kan. 48, 52, 766 P.2d 158 (1988).

The State requested that Smith be endorsed as a witness on the second day of trial. The State pointed out that Smith's statement was provided to defendant during pretrial discovery and again on the first day of trial and her testimony could come as no surprise. The State further contended that its failure to endorse Smith was purely an oversight. Defendant objected, arguing that the State had ample opportunity to endorse Smith and it had failed to do so.

Smith's testimony consists of 12 pages of the 418-page trial transcript. Smith provided testimony regarding her encounter with Bell a short time after the incident. Smith testified as to her conversation with Bell about what had transpired with Gustafson and the fact that she saw Bell burning his bloody shirt.

Defendant did not request a continuance when faced with the endorsement of Smith as a witness. There is no indication defendant was surprised by the content of Smith's testimony and there is no indication in the record that he changed his trial strategy based upon her endorsement as a witness.

We conclude the trial court did not abuse its discretion in the late endorsement of Smith.

## SUFFICIENCY OF THE EVIDENCE

Defendant was convicted of intentional second-degree murder. He argues the evidence was insufficient to support the conviction.

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Jasper*, 269 Kan. 649, 655, 8 P.3d 708 (2000).

Defendant relies on evidence that the victim suffered injuries to both sides and the top of his head. There was evidence defendant in the initial encounter punched the victim, causing him to fall to the ground. In the later occurrence, defendant struck the victim with what he admitted was a baseball bat. There was testimony that after the victim went down from the bat blow, Shane McAllister kicked the victim on the top of his head, with the inside of the shoe making the contact with what was described as a medium force. Defendant argues that the State did not prove that his baseball bat blow inflicted the fatal trauma. There was much evidence that the baseball bat was swung with great force, resulting in a loud noise on contact, and that the resulting wound bled profusely. The forensic testimony was that the massive skull fracture was consistent with the baseball bat blow.

Viewing the evidence in the light most favorable to the prosecution, there was ample evidence that the victim's death resulted from being struck in the head with a baseball bat intentionally wielded by the defendant with great force.

We are convinced that a rational factfinder could have found defendant guilty of intentional second-degree murder beyond a reasonable doubt.

The judgment is affirmed.

DAVIS, J., not participating.

BRAZIL, S.J., assigned.