NOT DESIGNATED FOR PUBLICATION

No. 113,923

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

AMY JEAN ROTH,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Opinion filed June 24, 2016.
Reversed and remanded with directions.

*Jodi Litfin*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*,
attorney general, for appellant.

*Debra J. Wilson*, of Capital Appeals and Conflicts Office, for appellee.

Before HILL, P.J, STANDRIDGE and ATCHESON, JJ.

*Per Curiam*:  The State charged Amy Jean Roth with theft of merchandise having
a value of $1,000 to $24,999. After a preliminary examination, the district court bound
Roth over on the charge. A few weeks after the preliminary examination, Roth filed a
motion to dismiss. Following a hearing on the motion, the court dismissed the case with
prejudice. The State appeals from this dismissal, arguing that the district court erred when
it found insufficient evidence to establish probable cause to believe that Roth intended to
permanently deprive the owner of the merchandise at issue. The State also argues that the
district court abused its discretion by dismissing Roth's case with prejudice. For the

1

reasons stated below, we agree with the State and, therefore, reverse the decision of the district court and remand the case for further proceedings.

FACTS

On October 16, 2014, Roth walked out of a Walmart store with a shopping cart containing $1,076 in merchandise without paying. Roth was arrested and charged with theft, a severity level 9 nonperson felony, in violation of K.S.A. 2015 Supp. 21-5801(a)(1).

A preliminary examination hearing was held. During the hearing, the parties presented testimony from two witnesses and offered several exhibits. The district court ultimately bound Roth over for trial, finding the evidence presented was sufficient to establish probable cause to believe that Roth exerted unauthorized control over property with the intent to permanently deprive the owner of the possession, use, or benefit of the owner's property. In explaining her decision, the district court judge stated she had no choice but to bind Roth over for trial because Roth never testified; therefore, the judge was not able to evaluate Roth's credibility.

About 3 weeks after the preliminary examination hearing, Roth's attorney filed a motion to dismiss pursuant to K.S.A. 2015 Supp. 22-3208. In the motion, Roth's attorney noted that she "should have called Ms. Roth to testify" at the preliminary examination. Roth's attorney requested that a hearing be convened on the motion to dismiss so that Roth could testify and provide the evidence necessary to support the request for dismissal. The district court scheduled a hearing on the motion, and Roth testified. At the conclusion of the hearing, the court granted Roth's motion and dismissed the case with prejudice.

ANALYSIS

1. *Procedural history*

Although a bit confusing, the procedural history of this case is relevant to both the standard of proof and the standard of review; thus, we begin our analysis of the State's claims on appeal with a brief overview of the rules of criminal procedure implicated in this matter.

Criminal cases generally are initiated by the filing of a complaint, which is the document that sets forth a formal charge against the defendant. The person signing the complaint must show reasonable cause or probable cause to believe that the defendant committed the offense. Once a complaint has been filed, the district court either may issue a warrant for the defendant's arrest or a summons requiring the defendant to appear at a hearing before the court at a specified time. At this first hearing, the defendant is advised of his or her rights and the procedures that will be followed.

The defendant (in felony cases) must then decide whether he or she wants a preliminary examination. See K.S.A. 2015 Supp. 22-2902(1). At a preliminary examination, the State has the burden to persuade the district court that there is probable cause to believe that a crime was committed and that the defendant committed it. The State may present witnesses, physical evidence, and documentary evidence to satisfy this burden. The defendant has the chance to make responsive arguments, to cross-examine the government's witnesses, and to present witnesses and other evidence of his or her own in an effort to show that probable cause is lacking. See K.S.A. 2015 Supp. 22-2902(3).

The preliminary examination hearing is an essential element within Kansas criminal procedure. Specifically, the preliminary examination hearing preserves the testimony of witnesses, specifies the nature of the crime charged, identifies at least some

of the evidence the State will rely on at trial, and affords the accused an opportunity to challenge the existence of probable cause, a court finding that is necessary to further detain the accused or require the accused to post bail. *State v. Boone*, 218 Kan. 482, 485, 543 P.2d 945 (1975), *cert. denied* 425 U.S. 915, *reh. denied* 425 U.S. 985 (1976), *superseded by statute on other grounds in State v. Valladarez*, 288 Kan. 671, 206 P.3d 879 (2009).

Notably, evidence presented at the preliminary examination hearing does not need to "prove guilt beyond a reasonable doubt, only probable cause." *State v. Washington*, 293 Kan. 732, 733-34, 268 P.3d 475 (2012) (citing *State v. Sherry*, 233 Kan. 920, 935, 667 P.2d 367 [1983]). "'Probable cause at a preliminary examination signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.'" *Washington*, 293 Kan. at 734 (quoting *State v. Berg*, 270 Kan. 237, 238, 13 P.3d 914 [2000]). In reviewing the evidence presented at a preliminary examination hearing, the district court must draw inferences in favor of the State. The court should find sufficient evidence exists to bind a defendant over for trial even when the evidence is weak if such evidence tends to show that the offense was committed and that the defendant committed the offense. *Washington*, 293 Kan. at 734. If the prosecutor successfully persuades the court that there is probable cause to believe the defendant committed the crime charged, the defendant is bound over for trial. If the prosecutor fails to make an adequate showing at the preliminary examination, the court may dismiss the case.

If the court binds the defendant over for trial but the accused believes the State failed at the preliminary examination hearing to bear its burden to show probable cause that the offense charged was committed and the accused probably committed it, the accused can challenge the probable cause finding by presenting evidence to rebut the presumption of correctness. The procedural mechanism for this challenge is a motion to dismiss under K.S.A. 2015 Supp. 22-3208, in which the accused formally alleges the

evidence presented at the preliminary examination hearing fails to establish a probability that the charged offense was committed or that the accused committed it. *Washington*, 293 Kan. at 734. The court may grant the accused's motion to dismiss only if the transcript from the preliminary examination hearing reflects a complete lack of evidence to support a probability that the crime charged was committed and that the accused committed it. "Any defense or objection which is capable of determination without the trial of the general issue may be raised before trial by motion." K.S.A. 2015 Supp. 22-3208(2).

"On appeal from that ruling, an appellate court reviews the district court's probable cause finding at a preliminary examination de novo." *Washington*, 293 Kan. at 734. Thus, we do not consider any of the district court's factual findings. An attempt was made in *State v. Harris*, 266 Kan. 610, 614, 975 P.2d 227 (1999), to change the standard of review to that applicable to negative findings or to require appellate courts to view the evidence in the light most favorable to the party prevailing below. But our Supreme Court refused to adopt either argument and continued the standard stated in *State v. Phelps*, 266 Kan. 185, 193, 967 P.2d 304 (1998), which was quoted in *Harris* in the following manner:

> """The function of a judge or magistrate at a preliminary [examination] hearing is not to determine the wisdom of the prosecuting attorney's decision to file and pursue charges against the defendant. Nor is it the function of the judge to conclude that there should be no prosecution because the possibility of a conviction may be remote or virtually nonexistent. [Citation omitted.] The sole question before the judge or magistrate at the conclusion of a preliminary [examination] hearing is the same question an appellate court is faced with upon de novo review: whether the evidence is sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt. [Citation omitted.]"' *Phelps*, 266 Kan. at 193." *Harris*, 266 Kan. at 614.

We are obligated in cases where there is conflicting testimony at the preliminary examination hearing to accept that version which is most favorable to the State. *State v. Bell*, 268 Kan. 764, 764-65, 1 P.3d 325 (2000).

2. *Probable cause*

Having reviewed the rules of criminal procedure implicated in this matter, we move on to consider the evidence before the district court (1) at the end of the preliminary examination, after which the court found probable cause to believe that Roth intended to permanently deprive Walmart of its property; and (2) at the end of the hearing on Roth's motion to dismiss, after which the court found there was *not* probable cause to believe that Roth intended to permanently deprive Walmart of its property.

Under K.S.A. 2015 Supp. 21-5801(a)(1), theft occurs when a person "[o]btain[s] or exert[s] unauthorized control over property or services" with the "*intent* to permanently deprive the owner of the possession, use or benefit of the owner's property or services." (Emphasis added.) Thus, a person must have the specific intent of depriving an owner of his or her property to commit theft. Intent, however, "'may be shown by circumstantial evidence, and a person is presumed to intend all the natural consequences of his [or her] acts. [Citation omitted.]'" *State v. Kettler*, 299 Kan. 448, 467, 325 P.3d 1075 (2014) (quoting *State v. Childers*, 222 Kan. 32, 37, 563 P.2d 999 [1977]). Accordingly, the State need only present evidence allowing a factfinder to infer that the defendant intended to commit theft.

At the preliminary examination, the State presented testimony from Rhonda Jamison, a Walmart asset possession officer who was on duty at the time the alleged theft occurred. Jamison testified to the following facts:

- Jamison noticed a woman, later identified as Roth, with an unusually large amount of merchandise in her cart.
- Jamison watched Roth place certain items in laundry baskets and reusable Walmart bags, both of which Roth placed in the cart she was pushing.
- Jamison was trained to look for shoppers concealing items in things like laundry baskets and bags while shopping. Jamison became particularly concerned when she saw Roth place a set of sheets in a reusable Walmart bag and then zip the bag shut.
- Jamison continued to follow Roth around the store for some time. Jamison observed Roth on the phone for about 10-15 minutes prior to Roth walking out the door.
- Jamison called her boss to make him aware that Jamison was following Roth, who had a large amount of merchandise in her cart.
- Jamison noted that the store had four exits: a southeast exit; a middle exit; a northeast exit; and a garden center exit, which was further north than the northeast exit.
- Jamison said the garden center exit was locked the day Roth was shopping and the only cash registers open were located near the southeast exit.
- Jamison watched as Roth pushed her cart from the southeast checkout area, to the northeast checkout area, to the garden center section, to circling around a couple of aisles, after which Roth then headed south to the middle doors, turned around and ultimately left the store through the northeast doors without paying for the merchandise in her cart.
- Jamison saw the Walmart greeter speak to Roth and then try to get Roth's attention as she exited through the northeast doors in order to conduct a receipt check, but Roth "wave[d] him off."
- Jamison said Roth was still on her cell phone as she left the store.

- Jamison was about 20 feet behind Roth when Roth exited the store. Having been forewarned, Jamison's supervisor was already outside when Roth exited the store.

- Jamison and a Walmart manager eventually stopped Roth about 30 feet outside the northeast exit doors.

- When Jamison told Roth she needed to come back inside, Roth initially resisted, explaining that she had come outside so she could better hear her phone call. Roth did end up coming back into the store with Jamison.

- Roth told Jamison that she was distracted and forgot to pay for the merchandise before she stepped outside to continue her phone conversation. Roth told Jamison that she would pay for the merchandise.

- Jamison called the police and escorted Roth back to the loss prevention office. Officer Rex Vickers arrived a short time later.

- Roth told Jamison and the others present in the loss prevention office that she was shopping for a Parent Teacher Organization (PTO) fundraising event and was shopping for Halloween crafts to do with her own children.

- Jamison told Officer Vickers that there was a possibility Roth was not attempting to steal the merchandise. Jamison conceded that she rarely ever comes to that conclusion in the course of her job as a loss prevention officer.

- Jamison testified that the total value of the merchandise in Roth's cart at the time she exited the store was $1,076, before tax.

The defendant presented testimony at the preliminary examination from Officer Vickers, the Topeka Police Department officer who arrested Roth. Vickers testified to the following facts:

- Roth explained to Officer Vickers that the whole incident was a big misunderstanding. Roth told Vickers she was distracted by the conversation she was having on the phone and accidentally went out the door without paying because she needed to get better cell service reception.
- While Roth was being interviewed in the loss prevention office, Roth told Officer Vickers that she intended to pay for the merchandise, that she wanted to pay for the merchandise, and that she had the ability to pay for the merchandise.
- Roth also explained to Officer Vickers that she was shopping for multiple people and multiple events. Specifically, Roth explained that she was buying many of the items for a PTO event.

At the end of the hearing, the district court found the evidence presented above was sufficient to establish probable cause to believe that Roth exerted unauthorized control over property with the intent to permanently deprive the owner of the possession, use, or benefit of the owner's property. Based on this finding, the district court bound Roth over for trial.

After the preliminary examination, Roth's attorney filed a motion to dismiss under K.S.A. 2015 Supp. 22-3208. At the hearing on the motion to dismiss, Roth testified to the following facts:

- Roth intended to pay for the items in her cart, but she pushed the cart out of the store without doing so because she was distracted by a phone call from her partner about her children.
- Roth was buying in bulk because she was from a small town that did not have a store equivalent to the size of Walmart.

9

- Roth separated the large number of items in her cart into different bags and laundry baskets because she was shopping for her immediate family, her mother, and for a PTO event, which she was in charge of planning.
- Roth would have needed a receipt to be reimbursed by the PTO.
- After Roth was released from jail, she bought all the arts and crafts supplies she needed for the PTO event, held the event, and took photos of the event. Roth's photos were admitted into evidence.

At the close of evidence, Roth's attorney argued the motion to dismiss should be granted because, based on the newly introduced testimony from Roth, the State failed to establish probable cause to believe that Roth *intended* to commit theft. Considering Roth's testimony in conjunction with the State's evidence presented at the preliminary examination, Roth's attorney argued the only evidence that even remotely supported a conclusion that Roth intended to permanently deprive the owner of the merchandise at issue was the fact that Roth walked through the doors without paying. The district court ultimately granted Roth's motion to dismiss, stating:

"What the Court does determine at this point in time is sufficiency of the evidence and one of the elements that certainly has to be proved by the State, even at the probable cause level at the sufficiency of evidence stage is the intent, whether the defendant intentionally exerted unauthorized control over property, in this case, the food and/or crafts or household items with the intention to permanently deprive the owner Wal-Mart.

"While the Court did not believe that there was an issue of binding the defendant over after the preliminary hearing because the Court has to look at the evidence in a light most favorable to the State, I think we have a different issue now when I've heard directly from the testimony. What I've heard directly from Miss Amy Roth regarding what was going on with her on that particular day and also what her intent was. Obviously her testimony was that she was distraught, distracted. She walks outside of Wal-Mart so that she can hear the person on the other line better, but that her intent was to make payment, she testified that she had ability to make that payment of the items in her cart.

10

"The Court at this time is going to grant the motion to dismiss. I don't believe that there's probable cause that the defendant did have the intent to permanently deprive Wal-Mart of the items in her cart that particular day. So the Court at this time would dismiss this case with prejudice."

On appeal, the State claims dismissal under K.S.A. 2015 Supp. 22-3208 was improper in this case because a preliminary examination already had been conducted and the district court already had found the requisite probable cause to bind Roth over for trial on the theft charge. We agree with the State. Although the district court was authorized to hold an evidentiary hearing on Roth's motion to dismiss under K.S.A. 2015 Supp. 22-3208, the purpose of the hearing was to permit Roth to present evidence to rebut the finding of probable cause previously made by the court after considering the evidence presented at the preliminary examination. Again, "'[p]robable cause at a preliminary examination signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.'" *Washington*, 293 Kan. at 734 (quoting *Berg*, 270 Kan. at 238). Notably, "'[t]he court's role is not to determine the wisdom of the decision to file charges or to determine whether the possibility of a conviction is likely or remote.'" *State v. Fredrick*, 292 Kan. 169, 171-72, 251 P.3d 48 (2011) (quoting *State v. Anderson*, 270 Kan. 68, 71, 12 P.3d 883 [2000]). The court must draw all inferences in favor of the prosecution. *Washington*, 293 Kan. at 734. Thus, when there is conflicting evidence, the trial judge "must accept the version of the testimony which is most favorable to the State." *Bell*, 268 Kan. at 764-65. "Even where the evidence is weak, the defendant should be bound over for trial if the evidence tends to disclose that the offense charged was committed and that the defendant committed it." *Washington*, 293 Kan. at 734.

In this case, Roth's testimony at the hearing on the motion to dismiss did not render null and void the initial facts upon which the court based its finding of probable cause at the preliminary hearing. At most, Roth's testimony created a dispute in material

11

fact on the issue of whether she intended to permanently deprive Walmart of the merchandise in her cart. Conflicting evidence in witness testimony creates a question of fact for the jury. See *State v. Corbett*, 31 Kan. App. 2d 68, Syl. ¶ 2, 59 P.3d 1054, *rev. denied* 275 Kan. 966 (2003). Here, there was conflicting evidence regarding whether Roth intended to commit the theft. Whether Roth actually intended to commit the theft constituted a question of fact for the jury to decide. Roth's motion to dismiss was improper under the plain language of K.S.A. 2015 Supp. 22-3208(2) because Roth did not raise an objection that could be determined without a trial on the general issue.

In summary, no matter how sympathetic Roth's explanation regarding why she exited Walmart without paying may be, the State presented evidence that would cause a person of ordinary prudence and caution to entertain a reasonable belief that Roth intended to permanently deprive Walmart of the items in her cart. Because the State presented this evidence, the district court was required to resolve all inferences regarding Roth's intent in the State's favor. The district court erred in failing to do so.

3. *Dismissal with prejudice*

An appellate court reviews the trial court's decision to dismiss the defendant's charges with prejudice for an abuse of discretion. *State v. Ralston*, 43 Kan. App. 2d 353, 357, 225 P.3d 741 (2010), *rev. denied* 291 Kan. 916 (2011). "Judicial discretion can be abused in three ways: (1) if no reasonable person would have taken the view adopted by the trial court; (2) if the judicial action is based on an error of law; or (3) if the judicial action is based on an error of fact. [Citation omitted.]" *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014).

In its brief, the State argues that the district court abused its discretion by dismissing Roth's theft charge with prejudice. But because we have found the district court erred by dismissing Roth's theft charge in the first instance, it follows that the court

abused its discretion by dismissing Roth's charge with prejudice. Again, in dismissing Roth's theft charge, the court failed to "accept the version of the testimony which is most favorable to the State" when presented with conflicting evidence. See *Bell*, 268 Kan. at 764-65. Moreover, dismissal was improper under the plain language of K.S.A. 2015 Supp. 22-3208(2) given that Roth's motion to dismiss raised a question of fact that could not be properly decided without a trial. Consequently, the district court abused its discretion by dismissing Roth's case with prejudice because its ruling was based on an error of law.

Reversed and remanded for further proceedings.